IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KAREN CHAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security | : | NO. 17-4748 |

O P I N I O N

JACOB P. HART                                         DATE: May 6, 2019
UNITED STATES MAGISTRATE JUDGE

Karen Chavis brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded. As set forth below, I will deny Chavis's Request for Review, and grant judgment in favor of the Commissioner.

I.   Factual and Procedural Background

Chavis was born on February 4, 1965.  Record at 157.  She left school after the eleventh grade.  Record at 43.  She has no prior relevant work history, since she left the formal workforce in 1999.  Record at 180.

On July 23, 2013, Chavis filed an application for SSI.  Record at 157.  In it, she alleged disability since December 12, 2012, caused by breast cancer and diabetes.  Record at 157, 180. Her application was denied initially and upon reconsideration.  Record at 97, 105.  Chavis then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 111.

A hearing was held in this matter on October 5, 2015.  Record at 36.  On November 20, 2105, the ALJ issued a decision which was partially favorable.  Record at 14.  The ALJ found that Chavis was disabled as of the day following her fiftieth birthday, February 3, 2015.  Id.

Although Chavis appealed, seeking a fully favorable decision, the Appeals Council denied her request for review on April 27, 2017, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Chavis then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity

    and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III. <u>The ALJ's Decision and Chavis's Request for Review</u>

  In his decision, the ALJ determined that Chavis suffered from the severe impairments of stage III breast cancer, and degenerative disc disease of the lumbar spine. Record at 16. She had other non-severe impairments, including hypertension and diabetes. <u>Id</u>. He found, however, that no impairment or combination of impairments met or equaled a listed impairment. Record at 17.

  The ALJ determined that Chavis retained the residual functional capacity ("RFC") to engage in sedentary work, with a sit/stand option. Record at 17-18. She was additionally limited in that she could only occasionally reach overhead or in all directions with her left, non-dominant, arm, or use hand controls with her left arm. Record at 17. Further, she could never crawl or climb ladders, ropes or scaffolds; and could only frequently (as opposed to constantly) stoop, kneel, or crouch. <u>Id</u>.

  Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that, before Chavis turned fifty, she was able to work as a document preparer, addresser, or a final assembler. Record at 25. He decided, therefore, that she was not disabled during that period. As of February 3, 2015, however, Chavis's age category changed, and she became entitled to a finding of disability under Medical-Vocational Rule 201.09. 20 CFR Part 404, Subpart P, Appendix 2, Rule 201.09.

  In her Request for Review, Chavis argues that the ALJ failed to demonstrate that his RFC assessment was supported by substantial evidence. She also maintains that the ALJ misunderstood or mischaracterized the testimony given by the vocational expert. Finally, she

3

argues that the ALJ should have found her to meet Rule 201.09 six months before her fiftieth birthday, thus entitling her to a finding of disability beginning on her alleged disabled date.

IV.     Discussion

A.      The RFC Assessment

Chavis argues that the ALJ's decision is defective in that it fails to set forth his reasons for accepting certain evidence and rejecting other evidence, as required by Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2013) and Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981).  She maintains that the ALJ found her capable of work, "without the slightest explanation or rationale."  Plaintiff's Brief at 23.

In fact, the ALJ reviewed the medical evidence at length, discussing treatment notes and the results of objective testing.  Record at 19-23.  He also reviewed Chavis's testimony, and her assertions in her disability paperwork as to her symptoms and functional limitations.  Record at 18.

As the ALJ noted, Chavis's treatment for her breast cancer began with chemotherapy, which started on January 3, 2013.  Record at 19, 353.  By February 19, 2013, her doctor, Richard Michaelson, MD, wrote: "Seems to have had an excellent response … with nearly complete clinical remission."  Record at 266.  With enthusiastic punctuation rarely seen in a medical record, Dr. Michaelson reported: "I cannot palpate any residual mass in the left breast!"  Id. Chemotherapy continued until April 16, 2013.  Record at 403.  Notably, in March, 2013, Chavis required a two-day emergency hospitalization and a blood transfusion for anemia.  Record at 286.  The ALJ noted this, as well.  Record at 20.

4

On May 8, 2013, Chavis underwent breast surgery. Record at 461. This was followed by radiation therapy from July 19, through September 19, 2013. Record at 441. During radiation, Chavis suffered from reddening and peeling off of some skin on her breast, although this resolved. Id. After the completion of cancer treatment, Chavis was left with some painful lymphedema in the left arm, which the surgeon described on September 25, 2013, as "mild." Record at 408. All of this is discussed in the ALJ's opinion. Record at 20-21.

The ALJ also reviewed the evidence as to Chavis's back impairment, reporting that Gary Miller, MD, a neurologist, examined her on August 1, 2014. Record at 21, 540. Dr. Miller noted normal muscle bulk and tone, and normal reflexes. Record at 541. Chavis had no palpable spinal or paraspinal tenderness. Id. Her gait and station were normal. Id. A September 9, 2014, MRI showed abnormalities with moderate to severe stenosis at L4-5 and mild to moderate stenosis at L5-S1. Record at 539. In January, 2015, Richard Lebovicz, MD, an orthopedic surgeon, prescribed a back brace and physical therapy. Record at 21, 523.

Ronald Karnaugh, MD, a physiatrist, examined Chavis on May 14, 2015. Record at 535. He diagnosed radiculitis at L4 and L5, secondary to L4-5 spondylolisthesis, foraminal stenosis, and lateral recess stenosis. Record at 537. He also diagnosed symptomatic left and right facet mediated pain at L4-5 and L5-S1, and significant lumbar epidural lipomatosis (numerous fatty deposits). Id. However, as the ALJ noted, Dr. Karnaugh also found Chavis to have full motor strength, intact sensation, and symmetric reflexes. Record at 22, 536. Her straight leg raising test and her dural tension sign were negative, suggesting an absence of radiculopathy. Record at 536. This was discussed in the ALJ's decision. Record at 22.

Even in a July 23, 2015, examination, Asif Bashir, MD, found Chavis to have full strength in the lower extremities at the hip flexors, quadriceps, hamstrings and toes/ankles, although her sensory examination was abnormal. Record at 22, 529. Her muscles had normal tone and bulk. Id. Straight leg testing was still negative. Id. The ALJ discussed this, as well – while conceding that, in September, 2015, Dr. Bashir recommended surgery. Record at 22.

Nor did the ALJ ignore Chavis's testimony. He acknowledged that she testified to continued pain and swelling in her left arm and hand, and to back pain which prevented her from walking or sitting for long. Record at 18-19.

The ALJ then synthesized this evidence as follows:

> While I find the claimant's allegations generally credible, the medical evidence of record does not support a finding that the claimant was unable to perform even a reduced range of sedentary work on a regular and continuing basis. The medical evidence shows that the claimant reported experiencing some fatigue and bilateral leg pain with chemotherapy and radiation, but it appears that she tolerated cancer treatments relatively well overall and with good response. She subsequently developed worsening back and bilateral leg pain with radiculopathy symptoms from DDD [degenerative disc disease] of the lumbar spine. The residual functional capacity assessment accounts for this evidence by limiting the claimant to the sedentary exertional level generally, and I included that the clamant needed the option to alternate between sitting and stand or walking based on the claimant's testimony and Dr. Karnaugh's examination findings from May, 2015. The evidence also shows that the claimant had some recurrent edema in the left upper extremity status-post partial mastectomy with reduced range of motion in the left shoulder secondary to pain, and the postural and manipulative limitations in the residual functional capacity assessment therein does not demonstrate that the claimant had greater functional limitations prior to February 3, 2015, which is the established disability onset date in this case.

Record at 23.

After this, the ALJ went on to discuss the medical opinion evidence of record, citing Social Security Ruling 06-3p. Chavis's breast surgeon Janette McDermott, MD, submitted a Neoplastic Report dated July 23, 2014. Record at 324. In it, she indicated that Chavis had no limitation in lifting, carrying, standing, walking, sitting, pushing or pulling, nor did she have any

other limitation related to her breast cancer surgery.  Record at 324-5.  Dr. McDermott qualified this only by stating that the doctors administering chemotherapy and radiation could comment on any limitations caused by the treatment they provided.  Record at 326.

The ALJ, however, rejected Dr. McDermott's opinion that Chavis had no exertional limitations, finding it inconsistent with the record as a whole, including Chavis's subjective statements, as well as the examination findings.  Record at 23.  The ALJ gave only partial weight to the opinions of agency reviewing physicians Isabella Rampello, MD, and Andrew Przybyla, MD, who found Chavis was capable of performing light work.  Record at 23-24, 79 (Dr. Rampello), 92 (Dr. Przybyla).  He noted that these doctors had not had the opportunity to see the records regarding Chavis's degenerative disc disease, or to hear her testimony.  Record at 24.

Further, the RFC assessment was clearly reflective of the evidence.  Because the ALJ credited Chavis's claim to suffer from continued pain and limitation in her left arm, he included a limitation in lifting and in the use of hand controls with that arm.  Record at 17.  The RFC assessment also accommodated Chavis's back symptoms by limiting her to sedentary work with a sit/stand option.  Id.  In sum, it is not clear how Chavis came to the conclusion that the ALJ provided "not the slightest explanation or rationale" for his decision.  She has not shown that she is entitled to relief on the basis of this argument.

B.    The Vocational Expert Testimony

Chavis maintains that the ALJ misunderstood or failed to recognize that the vocational expert testified that the jobs of document preparer, addresser, and final assembler, required the frequent use of two hands.  She cites testimony to this effect from the Record at pages 65 and 66.  According to Chavis, this is inconsistent with the RFC assessment, which provides for limited reaching with the left arm.

In fact, Chavis has failed to recognize that reaching and handling are distinct abilities in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 85-15 explains that reaching means "extending the hands and arms in any direction," while handling refers to "seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands"). 1985 WL 56857 at *7. The ALJ limited Chavis in reaching with her left arm, and with use of hand controls, but not in handling. As suggested in SSR 85-15, the ALJ obtained vocational expert testimony to identify sedentary jobs which accommodated these limitations.

This is quite clear from the transcript. First, the ALJ asked the vocational expert to identify jobs for an individual capable of light work, who could "occasionally reach overhead and in all directions with the left arm, which is the non-dominant arm." Record at 62. Then, he asked for jobs for an individual with the same limitations for a person limited to sedentary work, and with the other postural limitations he eventually included in the RFC. Record at 63. The expert identified the jobs of document preparer, addresser, and final assembler – all sedentary jobs. Record at 63-4.

Next, the ALJ asked for jobs with the same limitations as in his prior hypothetical for an individual who would require a sit/stand option, and who "would occasionally use hand controls with the left hand." Record at 64. The expert responded that the sedentary jobs he had identified would accommodate these limitations. Record at 64. These were the jobs identified in the ALJ's decision. It does not appear that the ALJ was confused by this testimony.

Chavis also appears to argue that all jobs which require handling also require reaching, since the worker would have to extend her hands to the front and sides to place her hands on the material used. This is not consistent with the DOT, which separates these capabilities; it can be inferred that "extending" the arms and hands, as reaching is defined in SSR 85-15, means something close to fully extending the arms, with the hands obviously located at the end of those arms. In this light, Chavis's alternative argument – that the jobs specifically identified required reaching in order to obtain the materials used – must be rejected, since there is no basis for assuming that anything close to a full extension of the arms would be required.

C. <u>Rule 201.09</u>

Finally, Chavis argues that the ALJ should have found her disabled six months prior to her fiftieth birthday, rather than on it, which would have meant that she could have received benefits beginning on the month after her claimed disabled date. She points to the regulation pertaining to age as a vocational factor, which states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 CFR §404.1563(b).

The age of 50 separates a "younger person" from a "person closely approaching advanced age" for the purpose of the regulations. 20 CFR §404.1563(c) and (d). The rules employed by the ALJ in this case dictated that a "younger person" with Chavis's other factors was to be found not to be disabled, but a "person closely approaching advanced age" with the same factors, was to be found disabled. 20 CFR Part 404, Subpart P, Appendix 2, Rule 201.09.

9

However, the rule Chavis cites does not meet the facts of this situation. If Chavis had been denied benefits because she was still technically a "younger person" on the date of the ALJ's decision, but she was due to turn fifty a few weeks after that and become a "person closely approaching advanced age" who *would have been* entitled to benefits, then the regulation she cited would have compelled the ALJ to consider whether she should have just been treated as already having turned 50. This is not what happened here.

In this case, the ALJ's decision was issued nine months after Chavis's fiftieth birthday. It was logically impossible that she could have been denied SSI simply because she turned fifty shortly after the decision – accordingly, no "borderline situation" existed. See Program Operations Manual System (POMS) DI 25015.006A and C. In fact, Chavis was awarded benefits as of her birthdate, when she entered the older category. A partial award of benefits does not create a borderline situation. Id. at 25015.006A.

V.      Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ must be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE